[Cite as *State v. Silaghi*, 2019-Ohio-4058.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

    v. :

ANTHONY SILAGHI, :

    Defendant-Appellant. :

Nos. 107890, 107895, 107906, and 107911

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** October 3, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-627423-A, CR-17-621058-A,
CR-17-614478-A, and CR-15-595004-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecutor, and James M. Rice, Assistant Prosecuting Attorney, *for appellee.*

Paul Mancino, Jr., *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Anthony Silaghi ("Silaghi") appeals his sentence in four companion cases, and asks this court to vacate his sentence and remand to the trial court for resentencing. Silaghi filed four separate appeals. Pursuant to

App.R. 3(B), sua sponte, we have consolidated all four appeals for the purpose of disposition, because they contain the same facts and issues. We affirm and remand the trial court's sentence.

## I.     Facts and Procedural History

{¶ 2}   On May 26, 2015, Silaghi pleaded guilty to one count of attempted domestic violence, a fifth-degree felony, in violation of R.C. 2919.25(A), and one count of attempted abduction, a fourth-degree felony, in violation of R.C. 2905.02(A)(2) in *State v. Silaghi*, Cuyahoga C.P. No. CR-15-595004-A (June 30, 2015). Silaghi was sentenced to two years of community control sanctions with conditions that included (a) he abide by all rules and regulations of the probation department; (b) he report weekly for three months and every two weeks thereafter; (c) he attend domestic violence programming as determined by the probation officer; (d) he attend additional programming as indicated in the case plan; (e) he would be subjected to random drug testing; and (f) he must pay a monthly supervision fee. In addition, Silaghi was advised that he could have no contact with the victim. If Silaghi violated any of the terms and conditions, he could be subject to 12 months imprisonment on attempted domestic violence and 18 months imprisonment on attempted abduction. If Silaghi served the aforementioned terms of imprisonment, he would then be placed on postrelease control for up to three years. If Silaghi violated postrelease control, the parole board could impose a prison term up to one-half of the stated prison term originally imposed upon him.

{¶ 3} On May 26, 2016, Silaghi was found to be in violation of his community control sanctions. The trial court continued Silaghi's community control sanctions with the prior conditions. On July 14, 2016, Silaghi was again found to be in violation of his community control sanctions. The trial court continued Silaghi's community control sanctions, but also placed a further condition on him. The trial court ordered Silaghi to successfully complete an inpatient treatment program.

{¶ 4} On February 15, 2017, Silaghi was arrested on a five-count indictment. On May 4, 2017, Silaghi pleaded guilty to one count of domestic violence, a fourth-degree felony, in violation of R.C. 2919.25(A) in *State v. Silaghi*, Cuyahoga C.P. No. CR-17-614478-A (June 14, 2017). As a result, Silaghi was found to be in violation of his community control sanctions. On September 1, 2017, the court modified Silaghi's community control sanctions.

{¶ 5} On October 31, 2017, Silaghi was arrested and charged with two counts of drug possession. On November 21, 2017, Silaghi pleaded guilty to one count of drug possession, a fifth-degree felony, in violation of R.C. 2925.11(A) in *State v. Silaghi*, Cuyahoga C.P. No. CR-17-621058-A (Nov. 21, 2017). At sentencing, Silaghi was found to be in violation of his community control sanctions, which were continued with the same prior conditions. The trial court stated that a "violation of the terms and conditions may result in more restrictive sanctions, or a prison term of one-year as approved by law. The prison term if imposed shall be served consecutively to the 18 month term in Cuyahoga C.P. No. CR-15-595004-A and the

18 month term in Cuyahoga C.P. No. CR-17-614478-A for an aggregate total prison term of 4 years." Journal entry No. 101483461 (Nov. 27, 2017).

{¶ 6} On March 31, 2018, Silaghi was arrested again, and on September 24, 2018, Silaghi pleaded guilty to one count of domestic violence, a third-degree felony, in violation of R.C. 2919.25(A), and one count of attempted abduction, a fourth-degree felony, in violation of R.C. 2905.02(A)(2) in *State v. Silaghi*, Cuyahoga C.P. No. CR-18-627423-A (Oct. 25, 2018). On October 25, 2018, Silaghi was found to be in violation of his community control sanctions and was sentenced on each of his past cases. Silaghi was sentenced to one-year imprisonment in Cuyahoga C.P. No. CR-15-595004-A for attempted domestic violence and attempted abduction; and one-year imprisonment in Cuyahoga C.P. No. CR-17-614478-A for domestic violence. Silaghi was sentenced to six months imprisonment in Cuyahoga C.P. No. CR-17-621058-A for drug possession and two years of imprisonment in Cuyahoga C.P. No. CR-18-627423-A for domestic violence, for an aggregate total of four-and-one-half years imprisonment, where each sentence was ordered to be served consecutively. The trial court stated,

> The Court finds that consecutive sentences is necessary to protect the public from future crime and/or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds that the defendant committed the offenses while on community control in other cases.

(Tr. 56.)

{¶ 7} Silaghi filed this appeal assigning three errors for our review:

I. Defendant was denied due process of law when in an eventual sentencing defendant was sentenced to consecutive sentences without the court making appropriate findings;

II. Defendant was denied due process of law when he was found to be a probation violator without the court informing defendant as to what the violation was; and

III. Defendant was denied due process of law when he was improperly sentenced for a community control sanction violation.

## II. Consecutive Sentences

### A. Standard of Review

{¶ 8} Now,

> [i]n reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Wright*, 8th Dist. Cuyahoga No. 106175, 2018-Ohio-965, 108 N.E.3d 1109, ¶ 9; *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence, or vacate a sentence and remand for resentencing, if it "clearly and convincingly finds" that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) or the sentence is contrary to law. A consecutive sentence is "contrary to law" if the trial court fails to make the statutorily mandated findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. *See State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 7 (noting that two ways to challenge consecutive sentences include the trial court's failure to make consecutive-sentence findings and the findings are not supported by the record).

*State v. Ortiz-Vega*, 8th Dist. Cuyahoga No. 107694, 2019-Ohio-2918, ¶ 66.

**B. Whether Defendant was Denied Due Process of Law when in an Eventual Sentencing Defendant was Sentenced to Consecutive Sentences without Making Appropriate Findings**

**{¶ 9}** R.C. 2929.14(C)(4) requires a trial court to make three distinct findings when imposing consecutive sentences. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, ¶ 56. Specifically, the trial court must find that a consecutive sentence for multiple offenses is "necessary to protect the public from future crime or to punish the offender." It must also find that the consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find that one of the three statutory factors set forth in R.C. 2929.14(C)(4)(a)-(c) apply. *Id.*

**{¶ 10}** In imposing consecutive sentences, "a trial court must state the required findings as part of the sentencing hearing * * * [a]nd because a court speaks through its journal, * * * the court should also incorporate its statutory findings [under R.C. 2929.14(C)] into the sentencing entry." (Internal citations omitted.) *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

**{¶ 11}** Silaghi argues that when he was sentenced in Cuyahoga C.P. No. CR-17-621058-A, the trial court did not make the necessary consecutive sentence

findings.  Thus, he contends that it was an error to later impose consecutive sentences.  However, if the trial court did not make the necessary consecutive sentence findings at the original sentencing hearing, the trial court is then required to make the R.C. 2929.14(C)(4) finding at the probation revocation hearing.  *See, e.g., State v. Herring*, 5th Dist. Stark Nos. 2005 CA 00070, 2005 CA 00080, and 2005 CA 00083, 2005-Ohio-5823*, ¶* 27-28 ("the trial court did not make the R.C. 2929.14(E)(4) findings at the original sentencing hearing.  Instead, the trial court warned appellant what the sentence would be if he were to violate his community control sanction that resulted in revocation.  Therefore, the trial court was required to make the R.C. 2929.14(E)(4) findings at appellant's probation revocation hearing prior to imposing the 38-month sentence").

{¶ 12} R.C. 2929.14(C)(4) dictates how a trial court can impose consecutive prison sentences.  After review, we find that the record clearly and convincingly supports the trial court's findings under R.C. 2929.14(C)(4).  We find that in this case, the record reveals that the trial court warned Silaghi at his sentencing hearing in Cuyahoga C.P. No. CR-17-621058-A that a violation of his community control sanctions would result in a consecutive sentence.  Thereafter, at the probation violation hearing and final sentencing hearing in CR-18-627423, the trial court stated,

> The Court finds that consecutive sentences is necessary to protect the public from future crime and/or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds that the defendant committed the

offenses while on community control in other cases. * * * In addition, the Court finds that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(Tr. 56, 58.)

{¶ 13} Based on the foregoing, we find that the trial court made the required findings under R.C. 2929.14(C) to support the imposition of consecutive sentences at the appropriate time. We also find that the record in this matter supports these findings. However, the findings were not incorporated in the journal entry. "The trial court must both make the statutory findings required for consecutive sentences at the sentencing hearing and incorporate those findings into its sentencing entry." *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 68 (8th Dist.), quoting *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court.

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 30.

{¶ 14} We, therefore, overrule Silaghi's assignment of error, but remand to the trial court to correct the journal entry through nunc pro tunc to reflect the consecutive sentences findings under R.C. 2929.14(C).

## III.   Probation Violation

### A.   Whether Defendant was Denied Due Process of Law when he was Found to be a Probation Violator without

**the Court Informing Defendant as to what the Violation was**

{¶ 15} Silaghi contends that the trial court found him to be a probation violator without specifying what violations he committed at the hearing or in writing. We find that this contention is misplaced. "The purpose of the written notice requirement is to inform the probationer of the claimed violation of probation. Thus, even though appellant may not have received written notice of the violations, he was actually and personally informed of his probation violations." *State v. Stowers*, 8th Dist. Cuyahoga Nos. 48572, 48575, 48576, 48577, 48578, 48584, 48590, 48872, and 48873, 1985 Ohio App. LEXIS 5610 (Jan. 31, 1985).

{¶ 16} At the probation revocation hearing, the record demonstrates that the trial court explained each of Silaghi's probation violations to him.

> Although a revocation proceeding is not a criminal proceeding, it must, nevertheless, comport with certain due process requirements. *See State v. Ryan*, [3d Dist. Union No. 14-06-55, 2007-Ohio-4743], ¶ 8, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The minimum due process requirements for a revocation hearing includes: (a) written notice of the claimed violations; (b) disclosure of evidence against the defendant; (c) the opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a neutral and detached hearing body; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revocation. *State v. McKeithen*, 3d Dist. Marion No. 9-08-29, 2009-Ohio-84, ¶ 22, quoting *State v. Miller*, 42 Ohio St.2d 102, 104, 326 N.E.2d 259 (1975), quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

*State v. Pavlich*, 6th Dist. Erie No. E-10-011, 2011-Ohio-802, ¶ 25. *See also State v. Reyes*, 8th Dist. Cuyahoga No. 107323, 2019-Ohio-1127, ¶ 26.

{¶ 17} At Silaghi's prior sentencing, he was ordered to remain drug free and not to have contact with the victim. The record reveals that Silaghi violated his community control sanction at least nine times. Silaghi subsequently pled guilty to drug possession and domestic violence that evidenced continued abuse of the victim. (Tr. 8-9.) Although the record does not demonstrate that Silaghi was provided with written notice of the claimed violations. However, Silaghi did not object at his sentencing hearing. "Failure to timely object to due process violations during a probation revocation proceeding waives any error." *State v. Mayfield*, 8th Dist. Cuyahoga Nos. 69051, 69052, and 69053, 1996 Ohio App. LEXIS 2158 (May 23, 1996).

{¶ 18} According to the transcript, during the sentencing hearing the state stated "[a]s the [c]ourt's aware, [Silaghi] is on probation to this [c]ourt for two prior domestic violence, one that specifically includes this listed victim." (Tr. 44.) (Oct. 25, 2018). The state went on to state that Silaghi physically abused his wife and was a habitual drug user. The prosecutor stated that, "[Silaghi] strangled her, he dragged her across the lawn with such force to the extent that, as the interviewing officers were talking to her, she's pulling strands of hair out of her — out of her head that have been pulled out by the defendant." (Tr. 7-8.) The state said, "[h]e was well aware of his duty not to interact with her while he was in jail; and instead, he made multiple attempts to not only communicate with her but to make sure that she did not appear to testify." (Tr. 45.) Silaghi violated his probation by his continued contact with his wife, the victim, and his continued usage of illegal drugs.

{¶ 19} The probation officer, Jermain Salaz ("Salaz"), testified at the probation violation hearing. The trial court questioned Salaz about Silaghi's cases and probation violations. The trial court and Salaz engaged in the following exchange:

COURT: All right. So I need you to walk me through some of these cases —

SALAZ: All right.

COURT: — because I don't have everything. Now, in case no. 594 — I'm sorry, 595004, is he still on community control? Was that extended, or do you know?

SALAZ: That was extended because he picked up the — well, because he pled guilty —

COURT: Okay.

SALAZ: — in another case.

COURT: And that one was a domestic violence —

SALAZ: Yes.

COURT: — correct?

SALAZ: Yes.

COURT: Okay. And that one we're looking at, he had 18 months over his head on that one?

SALAZ: Yes, Your Honor.

COURT: Okay. And then we have case no. 614478. He's still on community control in that case?

SALAZ: Yes, Your Honor.

COURT: And that case was a domestic violence as well?

SALAZ:    F4, 18 months as well.

COURT:    18 months?

SALAZ:    Yes.

COURT:    Okay.  And then we have case no. 621058.

SALAZ:    Drug possession.

COURT:    Okay.  And is he still on community control with me on that one?

SALAZ:    Yes, Your Honor.

COURT:    And that was one year?

SALAZ:    One year of prison, yes.  And all those —

COURT:    I'm sorry.

SALAZ:    I apologize for coughing.  I have a bit of an asthma issue. All those cases were extended.  Their expiration date is June 14th of 2019.

(Tr. 47-49.)

{¶ 20} Salaz's conversation with the trial court demonstrated that Silaghi continued to violate his probation conditions.  Silaghi was the last to speak before the trial court.  Silaghi stated,

> I — I just ask the [c]ourt that just to give me the chance to get evaluated to see how — how I — maybe medicine, maybe I have a bipolar disorder, depression disorder, anxiety.  I don't know what it is.  I just want to get eval — get an evaluation and see how — my probation officer and I can, as he said, we're doing good.  So I just want to show the [c]ourt that I can be on community control and not violate or do anything wrong.

(Tr. 50.)

{¶ 21} The record reveals that Silaghi was advised of his probation violations. In fact, Silaghi asked the court if he could show that he could be on community control without committing a violation during the probation violation hearing of the final case. The record shows that the trial court, on several occasions, warned Silaghi about the violations. The trial court afforded Silaghi the opportunity to be heard in person. Silaghi was also judged by a neutral and detached hearing body; and the trial court issued a written statement as to the evidence relied on and reasons for revocation.

{¶ 22} Silaghi argues that the trial court did not inform him of his specific probation violation at the probation revocation hearing. This argument is misplaced. The trial court did, in fact, inform him of his violations and followed all necessary procedures. We did not find any deprivation of appellant's right to due process and find no merit in appellant's argument.

{¶ 23} Therefore, Silaghi's second assignment of error is overruled.

## IV. Community Control Sanctions

### A. Standard of Review

{¶ 24} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either (1) the record does not

support certain specified findings, or (2) the sentence imposed is contrary to law. An appellate court does not review a trial court's sentence for an abuse of discretion. *Marcum* at ¶ 10.

**B. Whether Defendant was Denied Due Process of Law when he was Improperly Sentenced for a Community Control Sanction Violation**

{¶ 25} Silaghi contends that the trial court erred when it sentenced him to more than 180 days of community control sanctions for fourth- and fifth-degree felonies. Silaghi refers to *State v. Stanko*, 8th Dist. Cuyahoga No. 106886, 2019-Ohio-152, where this court decided that failing to attend AA meetings and testing positive for alcohol consumption is a technical violation. Silaghi argues that his probation violations are technical violations.

> The General Assembly did not define "technical violation" anywhere in the new R.C. 2929.15(B)(1)(c). However, courts of appeals have sought to define "technical violation" for the purposes of R.C. 2929.15(B)(1)(c) using the definition adopted by the Ohio Supreme Court in *State ex rel. Taylor v. Ohio Adult Parole Auth.*, 66 Ohio St.3d 121, at 124, 609 N.E.2d 546, for a parole revocation: "not criminal in nature."

*State v. Calhoun*, 6th Dist. Wood No. WD-17-067, 2019-Ohio-228, ¶ 28.

> R.C. 2929.15(B) provides that if the court announces a possible prison term during the sentencing hearing, the court may also impose that term if the conditions of a community control sanction are violated, but effective September 29, 2017, R.C. 2929.15(B)(1)(c) sets forth this limitation:
>
> (i) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fifth degree or for any violation of law committed while under a community control sanction imposed for such a felony that consists of

a new criminal offense and that is not a felony, the prison term shall not exceed ninety days.

(ii) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed one hundred eighty days.

*State v. Stanko*, 8th Dist. Cuyahoga No. 106886, 2019-Ohio-152, ¶ 7.

{¶ 26} After September 29, 2017, Silaghi pled guilty to a domestic violence third-degree felony. We find that R.C. 2929.15(B)(1)(c) does not apply to him, as determined by the trial court. R.C. 2929.15(B)(1)(c)(i) applies to fifth-degree felonies or community control violations that are not felonies. R.C. 2929.15(B)(1)(c)(ii) applies to fourth-degree felonies that are not offenses of violence and is not a sexually oriented offense or for any violations of community control violations that are not felonies. In addition, we find that Silaghi's plea to a third-degree felony domestic violence is an offense of violence and would therefore not be determined to be a technical violation.

{¶ 27} Therefore, Silaghi's third assignment of error is overruled.

{¶ 28} Judgment is affirmed and remanded.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR